# EXHIBIT A

**Rolls-Royce**

# LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT

## EQUIPMENT SUPPLY

1    ARTICLE I - GENERAL AND DEFINITIONS ........................................... 3
   1.1   GENERAL ........................................................................... 3
   1.2   CONTRACT .......................................................................... 3
   1.3   CONTRACT PRICE ................................................................ 3
   1.4   DAY ................................................................................... 3
   1.5   DELAY ................................................................................ 4
   1.6   DELIVERY AND DELIVERY DATE ............................................. 4
   1.7   EQUIPMENT ........................................................................ 4
   1.8   FIRST COMMERCIAL USE ...................................................... 4
   1.9   FORCE MAJEURE ................................................................. 4
   1.10  GUARANTEED PERFORMANCE LEVELS ................................... 4
   1.11  MINIMUM PERFORMANCE LEVELS .......................................... 4
   1.12  PAYMENT SCHEDULE ........................................................... 4
   1.13  PERFORMANCE TESTS .......................................................... 5
   1.14  PERFORMANCE TEST PROTOCOL ........................................... 5
   1.15  PERMITS ............................................................................ 5
   1.16  RESERVATION FEE ............................................................... 5
   1.17  SITE .................................................................................. 5
   1.18  WORK ................................................................................ 5

2    ARTICLE II - SCOPE OF WORK ..................................................... 5
   2.1   RR RESPONSIBILITIES .......................................................... 5
   2.2   CUSTOMER RESPONSIBILITIES ............................................. 6
   2.3   PRELIMINARY PLANT LAYOUT ............................................... 6
   2.4   SITE AREA CONDITIONS ....................................................... 6
   2.5   AVAILABILITY OF UTILITY CONNECTIONS ............................... 6

3    ARTICLE III - CONTRACT PRICE AND TERMS OF PAYMENT ............. 6
   3.1   CONTRACT PRICE ................................................................ 6
   3.2   PAYMENTS AND INVOICING ................................................... 7
   3.3   PAYMENT SECURITY ............................................................ 7
   3.4   TAXES ............................................................................... 8
   3.5   INDEMNIFICATION, SUBCONTRACTORS AND VENDORS ............ 8
   3.6   CHANGE ORDERS ................................................................ 8
   3.7   REQUEST BY RR .................................................................. 8
   3.8   NOTICE OF DELAY ............................................................... 9
   3.9   CHANGE IN WORK AND PAYMENT SCHEDULE .......................... 9

4    ARTICLE IV - WARRANTY ............................................................ 9
   4.1   SCOPE ............................................................................... 9
   4.2   TERM ................................................................................. 9
   4.3   REMEDY ............................................................................ 10







*LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

|       | 4.4   LIMITATION | 10 |

| 5  | ARTICLE V – INTELLECTUAL PROPERTY | 10 |
| 6  | ARTICLE VI - INDEMNITIES | 11 |
| 7  | ARTICLE VII - SITE TESTS | 11 |
|    | 7.1   SITE TESTS | 11 |
|    | 7.2   CUSTOMER ACCEPTANCE | 12 |
| 8  | ARTICLE VIII - LIQUIDATED DAMAGES FOR DELIVERY, PERFORMANCE | 12 |
|    | 8.1   LIQUIDATED DAMAGES | 12 |
|    | 8.2   LIQUIDATED DAMAGES – PERFORMANCE LEVELS | 12 |
|    | 8.3   LIQUIDATED DAMAGES – DELIVERY DELAY | 12 |
|    | 8.4   SET-OFF | 12 |
| 9  | ARTICLE IX- TERMINATION | 13 |
|    | 9.1   TERMINATION BY CUSTOMER | 13 |
|    | 9.2   TERMINATION BY RR | 13 |
| 10 | ARTICLE X - CANCELLATION FOR CONVENIENCE | 14 |
| 11 | ARTICLE XI - TITLE AND RISK OF LOSS | 14 |
| 12 | ARTICLE XII - INSURANCE | 14 |
|    | 12.1 CUSTOMER INSURANCE | 14 |
|    | 12.2 RR INSURANCE | 14 |
| 13 | ARTICLE XIII - PERMITS | 16 |
| 14 | ARTICLE XIV - FORCE MAJEURE | 16 |
| 15 | ARTICLE XV – WORK BY CUSTOMER | 16 |
| 16 | ARTICLE XVI - PARENT GUARANTY/ADVANCE PAYMENT  BOND | 17 |
| 17 | ARTICLE XVII- NOTICE | 17 |
| 18 | ARTICLE XVIII – OTHER SYSTEMS AND EQUIPMENT | 18 |
| 19 | ARTICLE XIX - NON-DISCLOSURE | 18 |
| 20 | ARTICLE XX - LANGUAGE | 18 |
| 21 | ARTICLE XXI - USE OF NAME AND RELEASE OF PUBLIC INFORMATION | 18 |
| 22 | ARTICLE XXII – DISPUTE RESOLUTION | 19 |
| 23 | ARTICLE XXIII – ASSIGNMENT | 19 |
| 24 | ARTICLE XIV - GENERAL PROVISIONS | 20 |





**Rolls-Royce**     *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
                                                *EQUIPMENT SUPPLY*

This Contract is entered into the 29th day of June, 2007, between Montgomery L'Energia Power Partners LP ("Customer"), a Delaware limited partnership, having its principal office at 403 Corporate Woods, Magnolia, Texas 77354, and Rolls-Royce Energy Systems Inc. ("RR"), a Delaware corporation, with its principal office at 105 North Sandusky Street, Mount Vernon, Ohio 43050. RR and Customer may sometimes be referred to individually as "Party" and jointly as "Parties."

### WITNESSETH:

WHEREAS, Customer desires to contract with RR to provide the equipment and technical direction described in this Contract for the L'Energia project ("Project") located in Lowell, Massachusetts.

NOW, THEREFORE, in consideration of the premises and the mutual covenants in this Agreement, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

# 1     ARTICLE I - GENERAL AND DEFINITIONS

## 1.1     GENERAL

This is a contract for the equipment and technical direction described in the Scope of Work attached as Appendix A. The following terms have the meanings specified in this Article I when capitalized and used in the Contract, including any Appendix. The meanings are applicable to both the singular and the plural.

## 1.2     CONTRACT

"Contract" means this document and any or all of the following Appendices, each of which when attached to this Contract is incorporated into and made a part of the Contract:

| | |
|---|---|
| Appendix A | Scope of Work |
| Appendix B | Technical Specifications |
| Appendix C | Payment Schedule and Delivery Terms |
| Appendix D | Schedule of Guaranteed Performance Levels and Liquidated Damages |
| Appendix E | Schedule of Customer Supplied Items |
| Appendix F | Specimen of Insurance Policy |
| Appendix G | Schedule of Cancellation Fees |

## 1.3     CONTRACT PRICE

"Contract Price" means $16,200,000 FOB Site, as that amount may be adjusted from time to time by Change Orders under Clause 3.5.

## 1.4     DAY

"Day" or "date" means a calendar day and includes Saturdays, Sundays and holidays. References to "business days" mean days other than Saturdays, Sundays, or other days on which banks in Houston, Texas are required to be closed.



 **Rolls-Royce**    *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*

*EQUIPMENT SUPPLY*

**1.5     DELAY**

"Delay" means any delay to the Work that is outside the control of RR caused by the Customer or its employees, agents or contractors.  To be considered a Delay, the delay must actually impact the schedules, time limits or Work specified under the Contract.

**1.6     DELIVERY AND DELIVERY DATE**

"Delivery" means delivery of the Equipment in fulfillment of the Delivery Terms stated in the Payment Schedule and Delivery Terms and "Delivery Date" means the date, as may be extended in accordance with these conditions, by which RR undertakes to complete Delivery of Equipment, all as stated in Appendix C.

**1.7     EQUIPMENT**

"Equipment" means the items of equipment listed in the Scope of Work (Appendix A) as may be amended from time to time by means of Change Orders ordered pursuant to Article 3.6.

**1.8     FIRST COMMERCIAL USE**

"First Commercial Use" means the first to occur of (i) the date the Equipment has received "PASS" notice from ISO-NE for meeting the Seasonal Claimed Capability Audit Test per ISO-NE Rules and Regulations for defining a new generator, or (ii) the date power is first generated by the Project for any purpose other than as required for the purpose of commissioning the Unit in accordance with mutually acceptable procedures and RR recommendations.

**1.9     FORCE MAJEURE**

"Force Majeure" means any circumstance or event that is beyond the reasonable control of the Party, such as the following to the extent they are beyond the reasonable control of the Party: an act of God or public enemy, explosion, fire, storm, earthquake, flood, drought, strikes, lockouts, labor troubles, riots, vandalism, sabotage, embargo, terrorism or terrorist acts or threats, war (whether or not declared and whether or not the United States is a participant), federal, state or municipal law, regulation, order, license, priority, seizure, or requisition.

**1.10     GUARANTEED PERFORMANCE LEVELS**

"Guaranteed Performance Levels" means the level of performance of the Equipment specified in the Schedule of Guaranteed Performance Levels and Liquidated Damages (Appendix D).

**1.11     MINIMUM PERFORMANCE LEVELS**

"Minimum Performance Levels" means the level of performance of the Equipment specified in the Schedule of Guaranteed Performance Levels and Liquidated Damages (Appendix D).

**1.12     PAYMENT SCHEDULE**

"Payment Schedule" means the schedule of payments defined in Appendix C specifying the portion of the Contract Price to be paid upon the occurrence of an event or at an agreed time, and as such schedule may be amended from time to time by Change Orders.



 **Rolls-Royce**   *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**1.13      PERFORMANCE TESTS**

"Performance Tests" means the operational tests of the Equipment conducted to verify that the Guaranteed Performance Levels have been achieved. Such Performance Tests shall be completed within the first 200 fired hours of the gas turbine at the Site, and shall be undertaken in accordance with the Performance Test Protocol.

**1.14      PERFORMANCE TEST PROTOCOL**

"Performance Test Protocol" means site testing procedures to be agreed upon by the Parties at least six weeks prior to initial Performance Tests and defines the testing procedures, correction curves and methodology for interpretation of results.

**1.15      PERMITS**

"Permits" means any necessary approval, waiver, consent, variance, license, permit or other similar act on the part of a governmental entity, regulatory agency or other person having authority over the Project's construction and/or operation.

**1.16      RESERVATION FEE**

"Reservation Fee" means that fee in the amount of $500,000 paid to RR pursuant to that letter agreement dated as of May 14, 2007 between RR and Montgomery Energy Billerica Power Partners LP, and assigned by such party to Customer.

**1.17      SITE**

The Site for the Project shall be as stated in the Scope of Work (Appendix A).

**1.18      WORK**

"Work" means the responsibilities of RR as specifically identified in the Scope of Work (Appendix A). Installation of the Equipment, interconnection with the utility, obtaining of Permits and interconnection with Customer's plant or facility are not part of the Work.

**2      ARTICLE II - SCOPE OF WORK**

**2.1      RR RESPONSIBILITIES**

RR will perform the Work set forth in this Contract.  Subject to the conditions of the Contract, the Work will be commenced and completed in accordance with the dates set forth in the Payment Schedule and Delivery Terms (Appendix C), and will be performed in a good and workmanlike manner with due diligence and without undue delays or interruptions.  If, after the date of this Contract, the cost to RR of performing the Work is increased due to changes of any date for performance made in accordance with this Contract or due to any changes in US federal, state or local law or regulation or code, the amount of the increase will be added to the Contract Price.



 **Rolls-Royce**  *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

RR will provide Customer with the drawings and specifications for Equipment installation. Those drawings and specifications will be provided according to the schedule set forth in the Project Schedule and Delivery Terms (Appendix C). RR is furnishing only the Work specified in this Contract and does not assume any responsibility for the installation and operation of other equipment or material, or the effect thereof on overall operations of which the Equipment is a part. Accordingly, any comments from RR regarding Customer's drawings, plans or construction are advisory only and RR shall not be liable for any such advice.

## 2.2   CUSTOMER RESPONSIBILITIES

Customer's responsibilities are as set forth in this Contract, including but not limited to the Schedule of Customer Supplied Items (Appendix E).

In the event that the Work includes the provision of technical advisers at the Site to give general advice relating to the installation, commissioning and testing of the Work, the Customer shall provide reasonable tool lock-up space and office facilities. Prior to arrival of any RR technical advisors at the Site, Customer must provide the following items at the Site and at Customer's sole cost: all Site labor, temporary and permanent electrical supplies, fuel, water and compressed air for commissioning and testing.

## 2.3   PRELIMINARY PLANT LAYOUT

Customer is responsible for the design, construction and completion of the facilities in which the Equipment will be located. Customer will comment on drawings and specifications provided by RR within the time periods stated in the Payment Schedule and Delivery Terms (Appendix C).

## 2.4   SITE AREA CONDITIONS

Customer is responsible for determining the fitness of the Site for the installation and operation of the Equipment. RR may rely upon information obtained from Customer regarding physical characteristics of the Site and has no responsibility or obligation to conduct independent testing or analysis.

## 2.5   AVAILABILITY OF UTILITY CONNECTIONS

Customer is responsible for ensuring the availability and connection of utilities, including water, fuel and electricity, to the Equipment, as well as the disposal requirements and limitations. RR will provide detailed drawings on the locations of the utility connections to the Equipment.

## 3   ARTICLE III - CONTRACT PRICE AND TERMS OF PAYMENT

## 3.1   CONTRACT PRICE

In consideration for the Work, Customer shall pay RR the Contract Price in the manner set out in this Contract.

 

 **Rolls-Royce** | *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**3.2**   **PAYMENTS AND INVOICING**

RR shall invoice Customer upon occurrence of the events and in the amounts described in the Payment Schedule and Delivery Terms (Appendix C). RR's invoice shall be accompanied by customary supporting documentation including evidence of the achievement of the relevant Milestone Event as shown on Appendix C (a "Milestone Event"). If Customer disputes an invoice, then Customer will submit its objections to the invoice in writing to RR within 15 days after Customer's receipt of the invoice; otherwise the invoice will be deemed accepted Payments on invoices shall be due 30 days following receipt of the invoice. If Customer fails to make any payment when due, then RR may, in addition to its other rights and remedies, assess and collect interest on the unpaid amount at a rate per annum equal to the prime rate charged by JP Morgan Chase Bank, New York, New York, as such prime rate is published on the first banking day following the day upon which payment hereunder is due. RR shall, at the time of submission of the Delivery FOB Milestone Event invoice submit to Customer a duly executed written waiver and release of RR subcontractor liens in form and substance acceptable to Customer.

RR shall provide 10 business days prior written notice of the occurrence of Milestone Events.

**3.3**   **PAYMENT SECURITY**

Customer and RR will finalize a mutually acceptable escrow agreement (the "Escrow Agreement") to support Customer's obligations to make payments with respect to Milestone Events 8, 9, 10 and 11, specified in Appendix C - Payment Schedule and Delivery Terms. The Escrow Agreement will be executed and delivered by Customer, RR and a bank (the "Escrow Agent") mutually acceptable to RR and Customer (which includes JPMorgan Chase Bank) by a date no later than 90 days from the date of execution this Contract. Customer shall deposit funds (all such funds, the "Escrow Amount") into escrow as provided in Items (b) and (c) below. All costs associated with the Escrow Agreement will be paid by, and all earnings on the escrow amount will be for the benefit of, Customer. The Escrow Agreement shall:

(a)    provide for withdrawal by RR from the Escrow Amount of the amount allocated to each of the Milestone Events 8, 9, 10 and 11 upon achievement of the individual Milestone Event described, subject to Customer's right to dispute any invoice or draw associated with such Milestone Event.

(b)    provide that, subject to Customer's receipt of the Performance Bond (as defined in Article XVI), the Escrow Amount to be initially deposited with the Escrow Agent shall be for 15% of the Contract Price, and that such amount will be deposited with the Escrow Agent by Customer at least 15 days prior to the expected date of achieving Milestone Event No. 8; and

(c)    provide that, subject to Customer's receipt of the Performance Bond, the Escrow Amount will be increased by Customer's deposit of a further 10% of the Contract Price on the first business day following the date that Milestone Event No. 8 is achieved.

If, for any reason, the Escrow Agreement is not executed and delivered, or the Escrow Amount is not funded as above, the amounts of the Contract Price relating to Milestone Events 8, 9, 10 and 11 will be payable prior to shipment of any of Equipment from its manufacturing location.



 **Rolls-Royce**    *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*

*EQUIPMENT SUPPLY*

**3.4    TAXES**

The Contract Price is exclusive of sales, use, excise, personal property, value added, goods and services or similar taxes assessed by or payable to any jurisdiction in the United States that may be imposed relative to a sale, use or operation of Equipment. The amount of any such taxes arising from or related to the sale or use of Equipment or the Work will be paid by Customer, or in lieu thereof Customer will provide RR with a tax-exemption certificate acceptable to the taxing authorities. Notwithstanding the foregoing, RR shall pay any customs or import duties or any taxes imposed by any jurisdiction other than the federal, state or local governments of the United States.

**3.5    INDEMNIFICATION, SUBCONTRACTORS AND VENDORS**

RR will defend Customer against all liability for mechanics and workmen's liens for Work performed by RR or materials furnished by RR or its subcontractors, including any costs and expenses for attorney's fees incurred by the Customer from any such liens. RR shall promptly after written demand by Customer, make all reasonable efforts to cause the effect of any suits or liens to be removed from Equipment that has become the Customer's property. RR may contest in good faith any such lien filed or suit initiated against Customer after it takes any steps necessary to remove any cloud on title to Customer's property.

**3.6    CHANGE ORDERS**

Any change to the Work must be ordered in accordance with this Clause 3.6. All Change Orders to alter, add to or deduct from the Work must be requested in writing by Customer under the following procedures. If Customer wishes to alter, add to, or deduct from the Work, then Customer will prepare a change request and present the change request to RR. Within ten (10) days (or such other period as agreed by the Parties) following receipt of the change request, RR will submit to Customer a written quotation of any adjustment to the Work, Delivery Date(s), Payment Schedule or the Contract Price that would result from the proposed change. If Customer then elects to proceed with the change with the adjustments required by RR, then Customer shall execute a Change Order authorizing modification to the Work and making any revisions to the Delivery date(s), Payment Schedule and Contract Price as shall have been agreed to by RR. RR shall execute a copy of the Change Order and return it to Customer. No Change Order is effective until signed by Customer and RR. Customer must issue a Change Order in the event of a Delay in accordance with Clause 3.8.

**3.7    REQUEST BY RR**

RR will provide Customer with written notice of any condition or event caused by Customer that RR believes will require modification in or change to the Work, Delivery Date(s), Payment Schedule or Contract Price, including any Delays referred to in Article XV. The notice will describe the condition or event in detail. As soon as practicable following delivery of the notice, RR will specify the adjustment to the Work, Delivery date(s) Payment Schedule and Contract Price. Following receipt of that notice, Customer will, in good faith and using reasonable discretion, determine whether any changes to the Work, Delivery Dates, Payment Schedule or Contract Price will be effected; provided, however, that RR is entitled to a Change Order necessitated by any Delay.





 **Rolls-Royce**     *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**3.8**     NOTICE OF DELAY

Promptly after a Party becomes aware of a Delay, that Party must give prompt notice of the Delay to the other Party, including all details concerning the Delay in the possession or knowledge of the notifying Party. Promptly after RR determines the details of the Delay, RR will notify Customer of the anticipated effect on the Work, the Delivery Date, or Contract Price. Customer will, within 10 days following receipt of the notice, or following any other period agreed upon by the Parties, issue a Change Order extending the time for performance of the Work for the period of the time by which RR has been delayed and/or adjusting the Contract Price.

**3.9**     CHANGE IN WORK AND PAYMENT SCHEDULE

The time for performance of all RR's obligations, including, but not limited to, the obligation to pay liquidated damages, may be extended by Change Order.

**4**     **ARTICLE IV - WARRANTY**

**4.1**     SCOPE

RR warrants to Customer that the Work shall be performed in accordance with good engineering and design practices for electrical power generation projects, and that, when complete, and subject to proper installation and interconnection by Customer, the Equipment will be compliant with the terms set forth in this Contract and all applicable laws and codes. RR further warrants that the Equipment will be new and of good quality, free from defects in materials and workmanship, conform to applicable laws, codes and the specifications and requirements of this Contract , and be properly assembled in accordance with applicable law, codes and the requirements of this Contract. If Equipment includes software developed by RR, RR warrants that the software furnished to Customer will be free of errors which materially affect its utility. If the Equipment contains software developed by a third party, RR warrants that it and Customer possess appropriate rights to use the software for purposes of operating the Equipment.

**4.2**     TERM

The warranties set forth in this Article IV shall be in effect until (i) 8,000 fired hours after First Commercial Use; (ii) 24 months after First Commercial Use; or (iii) 30 months from the date of Delivery (or, in the event Customer desires to defer or postpone Delivery for any reason, notification by RR of readiness to Deliver), whichever period expires.





 **Rolls-Royce**  *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*

*EQUIPMENT SUPPLY*

**4.3      REMEDY**

If the Equipment or any of its components prove to be defective in material or workmanship or otherwise fails to conform to the requirements of the warranties contained in this Contract within the warranty period, RR shall as soon as reasonably possible, at its option and expense, correct such defect or nonconformity by repair or replacement.   If RR fails to respond to a Customer claim of defect within 3 days after Customer notifies RR of the claim, then Customer may remedy the defect and charge RR for the reasonable cost of the necessary repairs, which repairs must be performed in a commercially reasonable manner.  This Clause 4.3 constitutes Customer's sole and exclusive remedy for breach of the foregoing warranties of RR. Repairs performed by Customer or Customer's contractors other than RR in a manner inconsistent with RR's reasonable instructions, manuals and other commonly referenced state and federal codes and standards, or in a manner that is otherwise negligent may result, at the option of RR, in the termination of the warranty on the repaired Equipment component in question and any other parts of the Equipment adversely affected as a consequence of Customer's negligent modifications or repairs. Any component of the Equipment so repaired or replaced shall be further warranted by RR until the later of 12 months from the completion of such repair or replacement or the end of the original warranty term specified in Clause 4.2.

**4.4      LIMITATION**

The warranties set forth in this Contract apply only if the Equipment is used, operated, maintained and repaired in accordance with good and diligent operating and maintenance procedures and substantially in accordance with the recommendations of RR and the manufacturer of the Equipment as set forth in service and support manuals, bulletins or other written instructions furnished by RR or the manufacturer to Customer.

RR has no responsibility or liability in relation to the use, operation and maintenance of ancillary equipment and systems provided by the Customer or for the performance of the Customer's employees.  Accordingly, except as explicitly set forth herein, RR makes no representations or warranties of any kind relating to the Customer's equipment, systems, or any components, parts or modules thereof, or the operation or performance of any of the foregoing alone or in conjunction with any equipment or services provided by Customer.

Guaranteed Performance Levels shall be as provided in Appendix D.

EXCEPT FOR THE WARRANTIES EXPRESSLY SET FORTH IN THIS CONTRACT, RR DISCLAIMS ALL WARRANTIES OF ANY KIND INCLUDING WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**5        ARTICLE V – INTELLECTUAL PROPERTY**

If Customer receives a claim that the Equipment or part thereof manufactured by RR, when used in the manner contemplated herein, infringes the proprietary rights of another, then Customer will notify RR promptly in writing and give RR all information readily available to it, assistance and exclusive authority to evaluate, defend and settle the claim. RR will then, at its own expense and option (1) settle the claim, or (2) procure for Customer the right to use the Equipment or (3) replace or modify the Equipment to avoid infringement, or (4) defend against the claim.  If any court of competent jurisdiction holds the Equipment or the use thereof to constitute an infringement, then RR, will pay any costs and damages finally awarded on account of the infringement, and if the use of the Equipment is enjoined, RR will take at its option either or both of the actions under (2), or (3) above.





 **Rolls-Royce**   *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

Customer must notify RR in writing as soon as reasonably possible after Customer receives notice of any such claims of infringement occurring in connection with the performance of the Work.  In turn, RR will promptly notify Customer in writing of any claims that RR receives alleging infringement of patents or other proprietary rights that may affect RR's performance of the Work.

The rights and obligations of the Parties with respect to intellectual property are solely and exclusively as stated in this Contract.

THE INTELLECTUAL PROPERTY OBLIGATIONS RECITED ABOVE ARE WRITTEN IN LIEU OF ALL OTHER INTELLECTUAL PROPERTY WARRANTIES WHATSOEVER, WHETHER ORAL, WRITTEN, EXPRESS OR IMPLIED.

## 6   ARTICLE VI - INDEMNITIES

6.1   RR agrees to indemnify, release, and defend Customer its agents, employees, directors and officers (the "Customer Group"), from and against any and all cost, loss, liability or expense including without limitation, attorney fees, arising out of or relating to third party claims for injuries or death to persons or damage to property to the extent caused by the negligence or intentional wrongful acts of RR, its employees or agents.  Customer agrees to promptly notify RR of any such claims and assist RR in the defense of the claim.

Customer agrees to indemnify, release, and defend RR, its agents, employees, directors and officers, from and against any and all cost, loss, liability or expense including without limitation, attorney fees, arising out of or relating to third party claims for injuries or death to persons or damage to property to the extent caused by the negligence or intentional wrongful acts of Customer, its employees or agents.  RR agrees to promptly notify Customer of any such claims and assist Customer in the defense of the claim.

6.2   The total liability of RR  (other than for [i] indemnification under Clause 6.1, [ii] RR's obligation for payment of liquidated damages under Article VIII, and [iii] RR's intentional breach of this contract by non-delivery and sale of the Equipment to a third party.) on any claim, whether in contract, tort (including negligence of any degree), or otherwise, arising out of, connected with, or resulting from the manufacture, sale, delivery, resale, repair, or replacement of the Equipment or the performance of the Work shall not exceed the Contract Price.

IN NO EVENT (OTHER THAN FOR INDEMNIFICATION UNDER CLAUSE 6.1), WHETHER AS A RESULT OF BREACH OF CONTRACT, ALLEGED NEGLIGENCE, OR OTHERWISE, SHALL RR BE LIABLE FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS, BUT NOT LIMITED TO, LOSS OF PROFITS OR REVENUE COST OF CAPITAL, OR BUSINESS INTERRUPTION, OR OTHER SIMILAR ITEMS OF DAMAGE.

## 7   ARTICLE VII - SITE TESTS

7.1   **SITE TESTS**

Site Performance Tests, when required as part of the Contract, will be conducted according to the Performance Test Protocol to determine compliance with Guaranteed Performance Levels. Guaranteed Performance Levels apply only to Equipment having completed 200 or fewer fired hours running at the Site.





 **Rolls-Royce**  *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**7.2**     **CUSTOMER ACCEPTANCE**

The Equipment will be deemed accepted and the Work completed upon the first to occur of (i) completion of installation and commissioning and completion of the Performance Test demonstrating that the Equipment achieves the Guaranteed Performance Levels or (ii) First Commercial Use, provided that this Clause 7.2 shall not limit Customer's remedies in respect of defective or nonconforming Equipment or Work.

# 8     ARTICLE VIII - LIQUIDATED DAMAGES FOR DELIVERY, PERFORMANCE

**8.1**     **LIQUIDATED DAMAGES**

In the event that RR fails to Deliver the Equipment by the Delivery Date, or if the Equipment fails to demonstrate the Guaranteed Performance Levels, RR shall pay to the Customer liquidated damages as set out in this Article VIII.

**8.2**     **LIQUIDATED DAMAGES – PERFORMANCE LEVELS**

If Performance Tests demonstrate that the Equipment does not achieve the Guaranteed Performance Levels, RR will first be given adequate opportunity (not to exceed 90 days) to modify or adjust the Equipment to improve the performance, prior to the imposition of liquidated damages. RR and the Customer will in good faith work together to minimize any Equipment downtime that may be necessary during the modification and adjustment process.  If within 90 days from the initial Performance Tests, RR has not rectified the deficiency to the extent the Equipment achieves the Minimum Performance Levels, R-R shall continue at its expense to modify or adjust the Equipment until the Equipment is able to attain the Minimum Performance Level. If R-R attains the Minimum Performance Levels, but does not achieve the Guaranteed Performance Levels, RR will pay to Customer  liquidated damages, not as a penalty, in an amount as calculated per the Schedule of Guaranteed/Minimum Performance Levels and Liquidated Damages (Appendix D). Once the Equipment achieves the Minimum Performance Levels, payment of the liquidated damages will be the sole remedy of Customer against RR, and the sole liability of RR to Customer, for failure to meet the Guaranteed Performance Levels.

**8.3**     **LIQUIDATED DAMAGES – DELIVERY DELAY**

If RR does not deliver the Equipment by the Delivery Date, RR agrees to pay liquidated damages, from the Delivery Date until Delivery, in accordance with the Schedule of Guaranteed Performance Levels and Liquidated Damages (Appendix D).  Delays, Force Majeure and changes in the Scope of Work entitle RR to extend the Delivery Date for a period commensurate with the duration and nature of the Delay, Force Majeure or change in Scope of Work.  If Delivery is delayed more than 120 days beyond the Delivery Date (as extended), Customer may reject the Equipment affected and RR will refund any previously paid portions of the Contract Price that relate to the rejected Equipment.  In all other cases, the liquidated damages payable are the sole remedy of Customer against RR and the sole liability of RR to Customer for failure to meet the Delivery Date.

**8.4**     **SET-OFF**

Neither Customer nor any affiliated company or assignee of Customer has the right to set off against any amounts that may become payable to RR under this Contract, any amounts that RR may allegedly owe or in fact owes Customer or any affiliated company or assignee on any other contract that RR may have with Customer or any affiliated company or assignee of Customer.



 **Rolls-Royce**

*LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*

*EQUIPMENT SUPPLY*

## 9      ARTICLE IX- TERMINATION

### 9.1      TERMINATION BY CUSTOMER

Customer may terminate the Contract on 7 days' prior written notice if RR: (i) is adjudicated bankrupt; (ii) makes a general assignment for the benefit of its creditors; (iii) has a receiver appointed on account of insolvency; or (iv) takes equivalent or similar actions to protect itself from claims of creditors.

Customer may terminate the Contract on 30 days' prior written notice if RR defaults in the performance of any material obligation under the Contract.  Failure by RR to achieve Delivery by the Delivery Date and failure to achieve the Guaranteed Levels of Performance are addressed by liquidated damages and are not material defaults. RR will have 30 days from receipt of written notice of termination to cure any default, or if the default cannot reasonably be cured within the 30-day period, to commence and diligently prosecute the cure.   If the default is cured within the cure period as the same may be extended by agreement of the Parties, the Contract will be deemed to have continued in full force and effect without interruption.

### 9.2      TERMINATION BY RR

RR may suspend the Work or terminate the Contract on 7 days' prior written notice if Customer (i) is adjudicated bankrupt; (ii) makes a general assignment for the benefit of its creditors; (iii) has a receiver appointed on account of insolvency; or (iv) takes equivalent or similar actions to protect itself from claims of creditors.

RR may suspend the Work or terminate the Contract if Customer  defaults in the performance of any of its material obligations under the Contract, by giving written notice of suspension or termination to Customer, and RR will be entitled to the cancellation fee determined in accordance with Schedule of Cancellation Fees (Appendix G) provided however that Customer will have 30 days from the receipt of the written notice to cure any non-monetary default and 20 days to cure any default in payment to RR.  If the default is cured within the applicable cure period (as it may be extended by agreement of the Parties), the Contract will be deemed to have continued in full force and effect.  If RR gives notice of termination or suspension, then the time for performance will be extended for a reasonable period to allow for the cure and a period of re-staging for the Work.  Once the maximum cure period has been reached, RR may convert the suspension into a termination on 30 days written notice to Customer.





 **Rolls-Royce**   *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**10**        ## ARTICLE X - CANCELLATION FOR CONVENIENCE

Customer may cancel this Contract at any time on or before July 31 2007 and in such event (1) any amounts theretofore paid by, or attributable to, it (including the Reservation Fee) will be credited against payments owed or to be owed by its affiliate, Montgomery Energy Billerica Power Partners LP ("Billerica Power Partners"), under a separate contract between Billerica Power Partners and RR (the "Billerica Contract"); (2) the Equipment that was to be provided under the Contract will be reassigned by RR for supply under the Billerica Contract; and (3) any necessary modification to the Equipment due to transfer to the Billerica Contract will be handled through a Change Order under the Billerica Contract. If Customer shall have cancelled this Contract and after negotiation in good faith by Billerica Power Partners and RR the Billerica Contract shall not have been executed on or before July 31, 2007 (or such later date agreed in writing between the Parties), the Cancellation Fees (Appendix G) of the Contract shall apply, in which case, and for the avoidance of doubt, the Reservation Fee shall be applied toward payment of such Cancellation Fees. In addition, if Customer chooses at any time after July 31, 2007 to cancel the Contract or any portion of it for any reason other than the default of RR, then Customer shall give written notice to RR and shall pay a cancellation fee to RR within 14 days of the date of issue of the notice. RR shall cease all Work upon receipt of such notice. The cancellation fee shall be determined in accordance with Schedule of Cancellation Fees (Appendix G) of the Contract.

**11**        ## ARTICLE XI - TITLE AND RISK OF LOSS

Delivery terms are as stated in Appendix C. Risk of loss for Equipment shall transfer to Customer upon Delivery FOB Site. Legal and equitable title shall pass to Customer as, and to the extent, the Equipment is paid for.

**12**        ## ARTICLE XII - INSURANCE

**12.1**      ### CUSTOMER INSURANCE

Without limiting the RR obligations, liabilities and responsibilities under the Contract, Customer shall, in the joint names of Customer and RR, insure the Equipment and keep each insurable part of it insured for its full replacement value against all insurable loss or damage during the course of Site erection and commissioning activities whilst RR has an obligation to provide advisory services. RR shall remain an additional insured, as its interests may appear, on such insurance until 30 days after First Commercial Use, and all applicable policies shall be endorsed to contain a waiver on the part of the insurer, by subrogation or otherwise, of all rights against RR.

**12.2**      ### RR INSURANCE

**12.2.1**    RR will effect and maintain at its own expense, insurance policies with insurers and under terms as shown in Specimen Insurance Policy (Appendix F) and as further set forth below. RR shall require its subcontractors to procure and maintain, at all times during the term of this contract, the minimum coverages and minimum limits as set forth in this Contract. Insurers and underwriters shall be satisfactory to Customer, authorized to do business in the jurisdiction where the Services are to be performed, and have A.M. Best rating of at least A- and financial rating of at least VII. All policies shall have adequate territorial and navigation limits for the location of the Services, including operations over water, if applicable. All insurance policies and coverage required to be maintained herein by RR shall extend to and protect Customer Group to the fullest extent. The amount of such coverage shall be primary to, and receive no



 **Rolls-Royce** *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*

*EQUIPMENT SUPPLY*

contribution from, any other insurance or self-insurance programs maintained by or on behalf of or benefiting Customer Group. THE LIMITS AND COVERAGE OF THE INSURANCE OBTAINED BY RR SHALL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY RR.

12.2.2    All of RR's insurance policies and excluding Worker's Compensation and Employer's Liability, shall be endorsed to name Customer Group as additional insureds. Endorsement shall be on a form substantially equivalent to ISO Form "20 10 07 04" covering both ongoing operations and products/completed operations. All of RR's insurance policies shall be endorsed to contain a waiver on the part of the insurer, by subrogation or otherwise, of all rights against Customer Group. Endorsement shall be on a broad form basis substantially equivalent to ISO Form 'CG 24 04 11 85" with no limitations. RR will endeavor to provide thirty (30) days prior written notice of cancellation or material change to Customer, as applicable.

12.2.3    The cost for any and all premiums, deductibles and self insured retentions shall be solely for the account of RR. Prior to the commencement of the Work, RR shall furnish Customer with current Certificates of Insurance, on a Standard Accord form, evidencing the coverage and satisfaction of conditions required herein.

A.    In the event that RR fails to provide Customer with such certificates, Customer has the right, but not the obligation, after five (5) days written notice to RR, to obtain insurance on behalf of RR, and to charge the cost to RR or deduct the cost from payments to RR.

B.    Failure by RR to acquire and/or maintain the insurance coverage and limits set forth in this Contract shall not act, nor shall it be construed, as relieving RR from its obligations and responsibilities under this Contract, including without limitation, RR's indemnification obligations hereunder. In the event RR fails to obtain any of the required insurance, RR shall itself be liable to Customer Group as an insurer to the same extent as if such insurance had been obtained.

C.    Customer shall not be obligated to make any payments to RR until properly and fully executed Certificate(s) have been provided to Customer; however, commencement of the Work by RR or payment by Customer shall not constitute a waiver by Customer of any rights in this Contract.

12.2.4    Commercial General Liability Insurance. Claims made form with minimum limits of liability for bodily injury, death, and property damage of $5,000,000 combined single limit per claim, and an aggregate annual minimum limit of $5,000,000. Coverage shall include:

A.    Broad Form Blanket Contractual Liability;

B.    Personal Injury;

C.    Premises/Operations;

D.    Products/Completed Operations.

12.2.5    Commercial Automobile Liability Insurance. Minimum limits of liability for injury, death or property damage of $2,000,000 combined single limit per occurrence;

Coverage shall include:

A. Owned, hired and non-owned vehicles;

B. RR's employees as Insureds.

 **Rolls-Royce**       *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

12.2.6    Workers' Compensation and Employer's Liability Insurance in accordance with statutory requirements of the states in which the Work is being performed and complying with federal laws and requirements, with minimum Employer's Liability limits of $2,000,000 per accident. No substitute policies shall be permitted. Coverage shall include:

A.    Occupational Disease;

B.    Other States Insurance;

C.    Voluntary Compensation;

D.    Alternate Employer Endorsements in favor of Customer.

# 13    ARTICLE XIII - PERMITS

If a Permit or regulatory approval is required to install or operate the Equipment or is required for the approval of the plans or specifications for the Equipment, then Customer assumes responsibility and expense of securing the requisite Permits or approval.

# 14    ARTICLE XIV - FORCE MAJEURE

Notwithstanding any other provision in this Contract, if either Customer or RR fails to perform or is delayed in performing any of its obligations under the Contract within the time specified in the Contract for such performance, and if caused by Force Majeure, then the failure or delay will not constitute a breach of the Contract, nor subject the Party so failing to any liability to the other, and the time of performance will be extended for the duration of the Force Majeure; provided the Party has notified the other Party of the existence of the condition and its expected duration and that the Party so failing or delayed exerts reasonable efforts to overcome, eliminate or terminate the cause of the failure or delay.

# 15    ARTICLE XV – WORK BY CUSTOMER

Since the Work provided by RR is only one part of the overall Project being undertaken by Customer, RR's performance under this Contract may be dependent upon work on other parts of the Project by Customer on and about the Project Site during the time RR is performing the Work. In conformity with Clause 3.7, RR will be entitled to extend the schedule for performance including but not limited to the Delivery Date, as a result of Delays caused by the work on the Project or on and about the Project Site performed or to be performed by Customer. In addition, RR is entitled to reimbursement of any additional out of pocket costs incurred as a result of Delays caused by the Customer. RR will promptly notify Customer of any Delays resulting from work by Customer.





 **Rolls-Royce** | *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

## 16    ARTICLE XVI - PARENT GUARANTY/ BONDS

16.1    Within 60 days of the execution of this Contract, RR will provide a guaranty of Rolls-Royce Plc in form and substance reasonably satisfactory to Customer, guaranteeing RR's payment and performance of its obligations under this Contract (the "Parent Guaranty").. RR's obligations to repay all amounts (including the Reservation Fee) paid by Customer to RR under this Contract prior to the delivery of the executed Parent Guaranty to Customer shall be secured by an advance payment bond issued by a bank reasonably acceptable to Customer, in the amount of such payments and with expiry date not prior to the date of actual delivery of the Parent Guaranty. Delivery to Customer of such advance payment bond shall be a condition precedent to achievement of the Contract Award Milestone Event (Milestone No. 2) set forth on Appendix C and any succeeding Milestone Event occurring prior to the date of actual delivery of the Parent Guaranty. Until delivery to Customer of the Parent Guaranty, (1) the expiry date of the advance payment bond shall be extended as required to provide that the expiry date shall not be earlier than the date such Parent Guaranty is actually delivered to Customer, and (2) if necessary, the amount of such advance payment bond shall be increased from time to time to ensure that the advance payment bond covers any additional amounts paid by Customer to RR, such increase to be a condition precedent to the payment by Customer of any such additional amounts.

16.2    Prior to, and as a condition precedent to, Customer's obligations to deposit any funds with the Escrow Agent pursuant to Clause 3.3 and the Escrow Agreement, RR will deliver to Customer a performance bond, in the amount of $1,620,000 and in form and substance reasonably satisfactory to Customer, guaranteeing the payment of and performance of RR's obligations under the Contract (the "Performance Bond") The Performance Bond date shall be not earlier than one month following the expiration of any period (including extensions of time granted under this Contract) for rectification of deficiencies in performance of the Equipment pursuant to Clause 8.2 hereof, provided, however, that until the Parent Guaranty shall be delivered to Customer, the expiry date of the Performance Bond shall be not earlier than the date corresponding to the date upon which the warranties set forth Article IV expire.

## 17    ARTICLE XVII- NOTICE

Any notice, demand, offer or other written instrument required or permitted to be given under the Contract ("notice") must be in writing signed by the Party giving the notice and must be hand delivered or sent by cable, facsimile transmission (with confirmation copy by air mail), certified mail, postage prepaid or overnight courier, to the other Party at its address set forth below:

If delivered to RR:        Rolls-Royce Energy Systems Inc.
                           105 North Sandusky Street,
                           Mount Vernon
                           Ohio 43050

If delivered to Customer:  Montgomery L'Energia Power Partners LP
                           403 Corporate Woods
                           Magnolia, Texas 77354

Each Party may change the place to which notices are to be sent or delivered. The change will be effected by notice to the other Party under this Article XVII. Any notices or other communications given by either Party will be deemed to have been duly given, if by facsimile transmission, 24 hours after sending, and if by mail, upon deposit with the United States Postal Service, proper postage prepaid, return receipt requested.



 **Rolls-Royce** | *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

## 18  ARTICLE XVIII – OTHER SYSTEMS AND EQUIPMENT

RR is furnishing only the Equipment specified in this Contract and does not assume any responsibility for other equipment, systems or material not supplied by RR, nor the effect of the Equipment or Work on the overall operation of the system of which the Equipment is a part if the Work is performed and the Equipment complies with the terms and conditions of this Contract.

## 19  ARTICLE XIX - NON-DISCLOSURE

**19.1**  The Parties may have a proprietary interest in information that may be furnished pursuant to this Contract. Each Party will keep in confidence and will not disclose the terms and conditions hereof and pricing or any such information which is specifically designated in writing as being confidential to the other Party. The provisions of this Clause 19.1 shall not apply to information, notwithstanding any confidential designation thereof, which is known to the Party to whom it was disclosed without any restriction as to disclosure or use at the time it is furnished, which is or becomes generally available to the public without breach of any confidentiality obligation, or which is received from a third party.

**19.2**  When required by any governmental authority (including by governmental regulations, applicable law or regulation) or by order of a court of competent jurisdiction or lawful subpoena, the Parties may disclose such confidential information to such governmental authority or court or as required by such subpoena; provided, however, that prior to making any such disclosure, the disclosing Party will: (a) provide the other Party with timely advance written notice of the confidential information requested by such governmental authority, court or subpoena ; (b) minimize the amount of confidential information to be provided consonant with the requirements of the governmental authority, court or subpoena involved; and (c) make every reasonable effort (which shall include participation by the other party in discussions with the governmental authority, court or issuer of the subpoena involved) to secure confidential treatment and minimization of the proprietary information to be provided.

## 20  ARTICLE XX - LANGUAGE

All documents relating to this Contract and the related Project, including without limitation, all contracts, agreements, schedules, drawings, specifications and communications will be in the English language.

## 21  ARTICLE XXI - USE OF NAME AND RELEASE OF PUBLIC INFORMATION

No public release of information (including, without limitation, photographs, films, announcements, and denials or confirmations) with respect to this Contract or its subject matter, or any order or phase of any program hereunder, may be made by either RR or Customer without the prior written approval of the other Party which approval will not be unreasonably withheld.





 **Rolls-Royce**

## 22      ARTICLE XXII – DISPUTE RESOLUTION

Pending resolution of any disputed matter involving the Work or the interpretation and administration of this Contract, the Parties will continue performance of their respective obligations under this Contract, subject to the other provisions of this Contract. Any controversy arising out of or relating to this Contract or any breach of it, may, at the option of either Party, be submitted to mediation or binding arbitration. Any arbitration will be administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Any such proceeding will take place in Houston, Texas.

## 23      ARTICLE XXIII – ASSIGNMENT

**23.1**   Except as expressly provided in this Article 23, the rights under this Contract shall not be assignable or transferable nor the duties delegable by either Party without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. No assignment by either Party shall relieve the assignor from liability hereunder, whether accruing before or after the date of assignment. Nothing in this Contract, express or implied, is intended to confer upon any person, firm, partnership, limited partnership, limited liability company, corporation or other entity (a "Person"), other than the Parties hereto and their permitted successors-in-interest and permitted assignees, any rights or remedies under or by reason of this Contract unless so stated to the contrary. Notwithstanding the foregoing:

23.1.1   Customer may grant to (i) any and all lenders providing senior or subordinated construction, interim or long-term debt financing or refinancing for Buyer, its affiliates or the Project, any lessor under a leveraged-lease transaction, and any trustee or agent acting on their behalf (including, without limitation, the independent engineer, if any) and (ii) any and all equity investors providing financing or refinancing for the Project, and any trustee, agent, or independent engineer acting on their behalf (each, a "Financing Party") a security interest covering its rights under this Contract; provided that neither the grant of any such interest, nor the foreclosure of any such interest, shall in any way release, reduce or diminish the obligations of Customer to RR hereunder. In connection with such security assignment, RR shall execute for the benefit of such Financing Party such consent and agreement as may be reasonably required.

23.1.2   This Contract may be assigned by Customer without the prior written consent of RR to (i) a purchaser of all or substantially all of the assets of Customer; (ii) an affiliate of Customer for performance of its obligations hereunder; (iii) a purchaser of the Project; or (iv) any other Person, firm or entity; provided that such purchaser, affiliate, or Person, as applicable agrees in writing to be bound by the terms of this Contract and has the financial and technical capability to carry out its obligations hereunder.

**23.2**   This Contract may be assigned without the prior written consent of Customer (but upon prior written notice) to any affiliate of RR for the performance of its obligations hereunder, provided RR shall not be released from liability hereunder unless the assignee agrees in writing to be bound by the terms of this Contract and has the financial and technical capability to carry out its obligations hereunder.



 **Rolls-Royce**  *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

**24**  **ARTICLE XIV - GENERAL PROVISIONS**

The definition of terms used, interpretation of this Contract and rights of Parties will be governed, construed and enforced under the laws of the State of New York, excluding its conflict of law provisions. The Parties consent to jurisdiction in Texas and agree that any action or proceeding arising out of this Contract or the performance of any Party may be brought in any court of competent jurisdiction in Houston, Texas. If RR institutes any action or proceeding for the collection of amounts not reasonably in dispute, then Customer will indemnify and reimburse RR for its reasonable attorneys' fees and expenses and costs of court.

No waiver, amendment or modification of this Contract will be binding upon the Parties unless made in writing and signed by a duly authorized representative of each of the Parties. The Parties have each participated in the drafting and preparation of this Contract. No rules of construction based on authorship apply.

This Contract sets forth the full and complete agreement of the Parties. The Contract supersedes any and all proposals, negotiations and representations of the Parties made or had prior to the execution hereof relative to the subject matter of the Contract. Headings are for convenience only and are not to affect the interpretation of any provision in this Contract.

This Contract is binding upon and inures to the benefit of the Parties, their respective successors and assigns. Either Party may assign its rights and obligations hereunder without the consent of the other Party; provided that no such assignment shall relieve the assignor of secondary liability hereunder.

[Signature pages follow.]





 **Rolls-Royce**   *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

In Witness whereof, the Parties have executed this Contract as of the date first above written.

Rolls-Royce Energy Systems Inc.

By _Thomas N Sacco_
Title _VICE PRESIDENT -COMMERCIAL_

 **Rolls-Royce**   *LOWELL (M.A052.01) - EQUIPMENT SUPPLY CONTRACT*
*EQUIPMENT SUPPLY*

Montgomery L'Energia Power Partners LP

By: Montgomery L'Energia Power LLC, its general partner

By:   *V. N. Gulasing*

Name:   V. N. GULASINGAM

Title:   Vice President of its General Partner